# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

———————————

OSCAR OROPEZA,

      Petitioner,

    v.                                                                    Case No. 2:20-cv-01235 KWR/KK

RICK MARTINEZ, *Warden,*
and RAUL TORREZ,
*Attorney General of the State of New Mexico,*

      Respondents.


## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 29). Petitioner filed a § 2254 habeas petition challenging his state criminal conviction for criminal sexual penetration of a minor on various grounds including prosecutorial misconduct and ineffective assistance of counsel.

The Court referred this case to Judge Khalsa, who issued Proposed Findings and Recommended Disposition recommended the Court deny Petitioner's habeas petition. Petitioner filed objections to Judge Khalsa's Proposed Findings and Recommended Disposition. *See* Doc. 35.

Pursuant to Federal Rule of Civil Procedure 72(b), the Court has conducted a *de novo* review of the record and of the Magistrate Judge's PFRD. After conducting this *de novo* review, and having considered the Magistrate Judge's PFRD and the objections, the Court finds no reason either in law or fact to depart from the Magistrate Judge's recommended disposition and hereby adopts it in full.

For the reasons stated below, Petitioner's objections are overruled and the PFRD is adopted. Petitioner's habeas petition is denied. The Court incorporates Judge Khalsa's comprehensive PFRD herein.

## BACKGROUND

### I.    Introduction.

On July 29, 2015, a jury found Petitioner guilty of one count of first-degree criminal sexual penetration of a child under 13. On April 26, 2016, judgment was entered and Petitioner was sentenced to 18 years' imprisonment. Petitioner appealed, and the judgment was affirmed.

Petitioner filed a state habeas petition. The state habeas court held an evidentiary hearing and denied his petition.

### II.   Trial summary.

Judge Khalsa summarized the trial proceedings as follows:

> Petitioner's jury trial commenced on July 27, 2015, and concluded on July 29, 2015. (Docs. 20-1, 20-2.) At trial, the State presented the testimony of Detective Rafael Medina, J.C., J.C.'s mother Sonia Patricia Cabral, J.C.'s father Fernando Moure,[1] and S.A.N.E. Nurse Diana Portillo. (Doc. 20-1 at 3-73; Doc. 20-2 at 143-235.) Mr. Coronado cross-examined each of these witnesses on Petitioner's behalf. (*Id.*)

> Evidence supporting the jury's verdict included the following. Mr. Moure and Ms. Cabral testified that, before the charged assault, J.C. had fallen asleep in the living room of the family home, and Mr. Moure and Ms. Cabral had walked Petitioner to J.C.'s bedroom and left him there to sleep, because he was too intoxicated to drive. (Doc. 20-2 at 148-51, 187-88.) J.C., in turn, testified that she was sleeping on the couch in the living room when someone picked her up, carried her to her bedroom, placed her in her bed, lay down next to her, put a hand down her pajama pants and underwear, and put a finger or fingers in her vagina. (Doc. 20-1 at 23-26, 29-31.) She further testified that after a few seconds she jumped out of bed and ran to the bathroom, and when she stepped out of the bathroom she looked into her bedroom and saw Petitioner there, which is how she knew he was

---

[1]  In the record, Mr. Moure is sometimes referred to as J.C.'s stepfather rather than her father. (*See, e.g.*, Doc. 20-2 at 139-40.) However, the distinction is immaterial to the claims raised in the Petition. (*See generally* Doc. 1.)

the one who had assaulted her.[2]  (*Id.* at 31-32, 65.) She also testified that she knew who Petitioner was because he had been her brother's football coach and she had met him before. (*Id.* at 33.) J.C. added that as she was walking away from the bathroom, she thought he said to come back, but she did not, instead taking steps to find her parents and disclose the abuse. (*Id.* at 33-37.) Nurse Portillo, who examined J.C. later the same day, testified that she found abnormal redness in J.C.'s vaginal area and a small cut or abrasion to J.C.'s left inner labial area, and that these injuries could have been caused by someone penetrating her with a finger. (Doc. 20-2 at 206-07, 215, 233-35.)

After the State rested, (Doc. 20-1 at 73), the trial court excused the jury and Mr. Coronado moved for a directed verdict, which the court denied. (*Id.* at 74, 77.) In responding to the motion, however, the prosecution agreed that the criminal sexual contact charge should be treated as a lesser included offense of the criminal sexual penetration charge. (*Id.* at 74-77.) After the court and counsel conferred regarding how this would impact jury instructions, Mr. Coronado told the court that, when the jury returned, the court should "just announce that the Defense rests." (*Id.* at 77-79.) The court responded, "You are going to rest as well, no opening?," to which Mr. Coronado replied, "No opening. We're not going to put on any testimony." (*Id.*) Accordingly, when the jury returned, the court announced that "the Defense advises … [t]hey are not going to make an opening and they're not going to call any witnesses. So basically we[']re finished with all of the evidence." (*Id.*) At no time before the trial concluded did Petitioner make any indication on the record that he disagreed with Mr. Coronado's stated decision to rest without presenting any evidence. (*Id.*; *see generally* Docs. 20-1, 20-2.)

In its jury instructions, the trial court directed the jury to consider the charge of criminal sexual contact only if it had a reasonable doubt as to whether Petitioner had committed the crime of criminal sexual penetration. (Doc. 19-1 at 103, 112.) After the court gave the jury its instructions, counsel for both sides made closing arguments, and the jury retired to deliberate. (Doc. 20-1 at 83-113.) On July 29, 2015, the jury returned its verdict, finding Petitioner guilty of criminal sexual penetration of a child under the age of thirteen. (Doc. 19-1 at 114; Doc. 20-1 at 117-18.)

Doc. 29 at 3-5 (footnote omitted).

## III.   Post-trial Proceedings.

Petitioner asserted the following claims in his federal habeas Petition:

---

[2] Consistent with J.C.'s testimony in this regard, Petitioner includes in his Petition a diagram of the Moure-Cabral home, which shows that there was a bathroom next to J.C.'s bedroom and that a person exiting it would necessarily walk either past or through J.C.'s bedroom door. (Doc. 1 at 14.)

(1)     The prosecution engaged in misconduct that deprived him of his constitutional right to a fair trial by: (a) failing to file a motion for Petitioner's "accusers" to undergo polygraph examinations; (b) presenting perjured testimony; and, (c) making a false and misleading statement in closing argument;

(2)     Petitioner's trial counsel provided him with constitutionally ineffective assistance by: (a) failing to file a motion for his "accusers" to undergo polygraph examinations; (b) failing to appeal the trial court's denial of his speedy trial motion; (c) failing to adequately cross-examine and impeach J.C. and her parents; and, (d) forbidding Petitioner from testifying;

(3)     Petitioner's sentencing and appellate counsel provided him with constitutionally ineffective assistance, and Petitioner was deprived of his right to a meaningful appeal, because sentencing and appellate counsel failed to take adequate steps to familiarize themselves with what happened at trial; and,

(4)     The trial court erred in denying Petitioner's *pro se* motion for a new trial.

*See* PFRD, Doc. 29 at 7-8, *citing* Doc. 1 at 1-32.[3]

As explained by Judge Khalsa, "the claims in Petitioner's Petition differ from the claims in his supplemental state habeas petition by: (1) challenging only one of the prosecutor's two allegedly improper closing remarks; (2) omitting ineffective assistance of counsel claims based on trial counsel's alleged failure to interview the Lara witnesses and his failure to object to the prosecutor's closing argument; (3) adding prosecutorial misconduct and ineffective assistance of counsel claims based on the failure to move for polygraph examinations; and, (4) clarifying that Petitioner's prosecutorial misconduct claim based on the prosecutor's closing reference to Mr.

---

[3]  The Court follows this organization of the claims provided by Judge Khalsa. Petitioner followed this organization in his objections to the PFRD. *See* Doc. 35.

Moure's and Ms. Cabral's testimony also encompasses a claim based on the prosecutor's presentation of this testimony." Doc. 29 at 8, *citing* Doc. 19-1 at 270-92, Doc. 1 at 1-32.

Judge Khalsa recommended that the Court deny each of Petitioner's claims. *See* Doc. 29. Petitioner filed objections to Judge Khalsa's recommendation. *See* Doc. 35.

## DISCUSSION

The Court has conducted a *de novo* review of the record and Judge Khalsa's PFRD. That process included a careful review of the relevant briefing along with the record. Judge Khalsa comprehensively addresses the issues and claims in her PFRD. Where a magistrate judge thoroughly addresses an issue and the district judge can see no error, the district judge need not explain further. No statute or rule requires a district judge under such circumstances to make any additional specific findings. *see Griego v. Padilla (In re Griego),* 64 F.3d 580 (10th Cir. 1995); *Garcia v. City of Albuquerque*, 232 F.3d 760, 766–67 (10th Cir. 2000). Therefore, the Court overrules Petitioner's objections and adopts the PFRD in full. Alternatively, to the extent Court must set out its reasoning, the Court addresses Petitioner's claims below.

## I.     Relevant Standard.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of Hobson's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Before addressing the merits of [the] claim, [the petitioner] must show that he can satisfy [certain] procedural requirements." *U.S. v. Greer,* 881 F.3d 1241, 1245 (10th Cir. 2018). Those requirements generally include timeliness, exhaustion, and the absence of a procedural bar. *See* 28 U.S.C. §§ 2244(d)(1) and (b)(1)(A); *Fairchild v. Workman,* 579 F.3d 1134, 1141 (10th Cir. 2009). If the procedural requirements are satisfied or excused, the petitioner must

then show the state habeas court's adjudication of the claim: (1) "resulted in a decision that was contrary to ... clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[4] (2) "resulted in a decision that ... involved an unreasonable application of, clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § at 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Williams* v. Taylor, 529 U.S. 362, 405-6 (2006)). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 562 U.S. at 413). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the state

---

[4] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings-the exclusive touchstone for clearly established federal law-must be construed narrowly and consist only of something akin to on-point holdings").

habeas court's factual findings unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state-court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## II.   Review of Magistrate Judge's PFRD.

Although Petitioner filed a 74-page objection to Judge Khalsa's PFRD, he failed to specifically object to Judge Khalsa's PFRD by showing how her recommendations were incorrect. Moreover, Petitioner's objections are difficult to follow and often repeat his Petition.

" 'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.' " *United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). The Tenth Circuit has adopted a firm waiver rule, where the failure to make timely and specific objections to a PFRD waives both district court and appellate review. *One Parcel*, 73 F.3d at 1059-60.

An objection must be sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute. *One Parcel*, 73 F.3d at 1059-60. By contrast, objections that are "nonspecific, too general, and fail[] to meaningfully address the PFRD's ultimate holding or its underlying findings and conclusions[]" may be deemed waived. *Leal v.*

*United States*, No. CIV 22-761 JB/JFR, 2023 WL 6360864, at *4 (D.N.M. Sept. 29, 2023); *see also Shepherd v. Rios*, 2018 WL 1866111, at *1 (W.D. Okla. Apr. 18, 2018) (deeming waived objection that "d[id] not attempt to come to grips with [PFRD's] analysis or conclusions in any specific way, [but] rel[ied] for the most part on re-adopting . . . earlier arguments."). The failure to file specific objections waives *de novo* review by the district court. *See One Parcel*, 73 F.3d 1057, 1060–61 (10th Cir. 1996).

### III.    <u>Mixed Petition</u>.

Petitioner's federal habeas petition includes some claims which were not presented to the state habeas court. The Court nevertheless concludes it may still deny the petition, as explained below.

Judge Khalsa explained that the claims in Petitioner's federal Petition referring to prosecutorial misconduct and ineffective assistance of counsel claims based on the failure to move for polygraph examinations of his "accusers" were not asserted in the state habeas petition, and are therefore unexhausted. Doc. 29 at 7-8 n.3, *citing* Doc. 19-1 at 270-92 *with* Doc. 1 at 1-32.

A federal habeas petitioner is generally required to exhaust his claims by presenting them to the state court, and federal courts may not adjudicate mixed petitions and must dismiss them in their entirety. *May v. Heimgartner*, 794 F. App'x 751, 755 (10th Cir. 2019). This rule of total exhaustion, however, "is not absolute." *Harris v. Champion,* 48 F.3d 1127, 1131 n.3 (10th Cir. 1995). A district court presented with a mixed petition has three other options. *See Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016). As relevant here, a petition "may be denied on the merits" in its entirety, notwithstanding the failure to exhaust. 28 U.S.C. § 2254(b)(2); *Moore v. Schoeman*, 288 F.3d 1231, 1235-36 (10th Cir. 2002) (explaining § 2254(b)(2) permits

"deny[ing] the entire petition on the merits," but not a "hybrid approach"). Here, the Court has chosen to deny the petition in its entirety.

Petitioner objected that his claims should not be denied on the basis of exhaustion. Doc. 35 at 1. Here, however, the PFRD did not recommend that the claims be denied on the basis of exhaustion. Rather, the PFRD recommended that the unexhausted claims be denied on the merits. Therefore, Petitioner's objection is overruled.

IV.   **Petitioner has not demonstrated prosecutorial misconduct (Claim 1).**

Petitioner asserts in his federal Petition that the prosecution engaged in misconduct that deprived him of his constitutional right to a fair trial by: (a) failing to file a motion for Petitioner's "accusers" to undergo polygraph examinations; (b) presenting perjured testimony; and, (c) making a false and misleading statement in closing argument. As explained by Judge Khalsa, none of these claims have merit. Petitioner's objection is overruled, the PFRD is adopted, and the claims are denied.

A.   **Failure to file motion to compel prosecution witnesses to take polygraph examination (Claim 1(a)).**

Petitioner asserts he was denied his constitutional right to a fair trial because the prosecution failed to file a motion for his accusers, i.e., the Government's witnesses, to undergo a polygraph examination. Petition, Doc. 1 at 4-5.

As explained by Judge Khalsa, Petitioner did not exhaust this claim regarding the polygraph, but the court may still deny it on the merits as (1) respondents waived exhaustion, and (2) it is not a colorable claim. Here, Respondents expressly request the Court deny the claim on the merits despite the non-exhaustion. Doc. 19 at 15-16. Moreover, a petition may be denied on the merits even if some claims are unexhausted. 28 U.S.C. § 2254(b)(2) ("An application for a writ

of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Here, Petitioner has not cited to any case law stating that prosecution has a duty under federal law or the United States constitution to move to have its witnesses take polygraph exams. Two cases have noted the absence of any such authority. *See United States v. Quigg*, No. 15-cr-147, 2021 WL 270672, at *14 (D. Mont. Jan. 27, 2021); *United States v. Ruiz-Herrera*, No. 06-cr-537-3, 2011 WL 13187012, at *4 (E.D. Pa. Mar. 9, 2011).

Moreover, the prosecutor was not permitted to file a motion compelling the witnesses to take a polygraph examination. New Mexico Rule 11-707 specifically provides that "[n]o witness shall be compelled to take a polygraph examination," thereby prohibiting the relief Petitioner claims the prosecution should have sought. N.M. R. Evid. 11-707(F). As explained by Judge Khalsa:

> …not only has Petitioner failed to challenge the constitutionality of this rule, (*see generally* Doc. 1), but also it would easily pass federal constitutional muster. *See, e.g., United States v. Scheffer*, 523 U.S. 303, 312, 316-17 (1998) (upholding constitutionality of blanket rule excluding polygraph evidence in military trials); *cf. Degeare v. Bear*, 769 F. App'x 606, 615 (10th Cir. 2019)[5] (rejecting ineffective assistance of counsel claim based on appellate counsel's "fail[ure] to challenge Oklahoma's exclusion of favorable polygraph results" in criminal trials). Petitioner fails to provide any persuasive reason why the prosecution's compliance with a constitutionally valid state-court rule should be considered misconduct at all, much less misconduct that violated his federal rights.

Doc. 29 at 12-13.   The Court agrees with this reasoning and adopts it herein.

Petitioner objects, but his objections do not provide any reason why the Court should not adopt Judge Khalsa's recommendation. *See* Doc. 35 at 5-13. Petitioner asserts that because the prosecution asked for discovery of the results of any polygraph examination he took, that must

---

[5] In the Tenth Circuit, unpublished decisions are not binding precedent but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

mean that his accusers must be made to take a polygraph examination. Doc. 35 at 13-22. The Court disagrees. Petitioner has not pointed to anything in the record suggesting that his accusers took a polygraph examination and the results were not disclosed to him. In his objection, Petitioner asserts his due process rights were violated, and cites to *United States v. Scheffer*, 523 U.S. 303, 313, 118 S. Ct. 1261, 1267, 140 L. Ed. 2d 413 (1998). But that case held that a rule excluding polygraph results offered by a defendant to support his credibility in a military trial did not unconstitutionally abridge a defendant's right to present a defense. It did not hold that a state rule prohibiting witnesses from being compelled to take a polygraph examination was unconstitutional.

Even upon *de novo* review, the Court finds that Judge Khalsa's recommendation is well-taken and the Court adopts it.

**B.     Presenting perjured testimony (Claim 1(b)).**

Petitioner asserts that the prosecution committed misconduct that deprived him of his constitutional right to a fair trial by presenting perjured testimony. Petitioner asserts that the prosecution presented perjured testimony from Mr. Moure and Ms. Cabral regarding Mr. Moure's location and activities just before J.C. first told Ms. Cabral that Petitioner had sexually assaulted her. *see* Petition, Doc. 1 at 7-8.

Judge Khalsa found that the allegedly perjured testimony (1) was not demonstrably false, (2) more probably reflected the witnesses' misremembrances or misstatements of this inconsequential point; and (3) was unlikely to have affected the verdict.   Doc. 29 at 15-17.   The Court agrees.

"The Fourteenth Amendment's Due Process Clause prevents the government from knowingly using perjured or false testimony at trial." *Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019). And the "same result obtains when the State, although not soliciting false

evidence, allows it to go uncorrected when it appears." *Giglio v. United States*, 405 U.S. 150, 153 (1972). Moreover, this principle "does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959). "A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154 (quotation marks and ellipses omitted).

Critically, however, "contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." *Knighton v. Mullin*, 293 F.3d 1165, 1174 (10th Cir. 2002) (brackets omitted), *abrogated on other grounds by Johnson v. Williams*, 568 U.S. 289 (2013); *United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998). Also, "witnesses frequently disagree in their interpretation and recollection of events, and tension between witnesses' testimony does not prove subornation of perjury or perjury." *Nosewicz v. Janosko*, 857 F. App'x 465, 471 (10th Cir. 2021) (ellipses and quotation marks omitted).

> Discrepancies in testimony are common, and can generally be explained as resulting from human failings short of intentional lying. To reverse [a] conviction on this ground would bring many, perhaps most, convictions into question. We will reserve such reversals for cases in which perjury and knowledge of perjury are either clear on the record or have been found by the lower court.

*United States v. Gordon*, 657 F. App'x 773, 780 (10th Cir. 2016); *see also United States v. Harmon*, 918 F.2d 115, 117 (10th Cir. 1990) (holding that the "defendant did not show that the government knowingly presented false testimony" where witnesses gave contradictory testimony but "there was no concrete evidence as to which story was correct").

Judge Khalsa recommended that Petitioner's claim be denied. Judge Khalsa found that the allegedly perjured testimony (1) was not demonstrably false, (2) more probably reflected the witnesses' misremembrances or misstatements of this inconsequential point; and (3) was unlikely

to have affected the verdict.    Doc. 29 at 15-17.

As Judge Khalsa found, the state habeas court did not find perjury even though Petitioner pointed out Mr. Moure's and Ms. Cabral's prior inconsistent statements in his supplemental state habeas petition. PFRD, Doc. 29 at 16-17, *citing* Doc. 19-1 at 273-75, 432-34. Further, neither perjury nor knowledge of perjury is "clear on the record." *Gordon*, 657 F. App'x at 780. Rather, the discrepancies on which Petitioner relies could readily be "explained as resulting from human failings short of intentional lying." *Id.* It is likely that Mr. Moure and Ms. Cabral simply misremembered or misstated Mr. Moure's precise location within the master suite just before J.C.'s disclosure in their unsworn statements. Both had been awake and drinking alcohol throughout the night and into the early morning hours by the time of J.C.'s disclosure; the disclosure made Ms. Cabral "shocked," "scared," "angry," and "upset"; and, after the disclosure, Mr. Moure's and Ms. Cabral's immediate concerns were to get Petitioner out of the home and to take J.C. to a hospital. Doc. 20-2 at 146-51, 153-54, 167-78, 184-90, 194-97.

Moreover, as Judge Khalsa found, there is no reasonable likelihood that the challenged testimony affected the jury's judgment because Mr. Moure's precise location and activities within the master suite just before J.C.'s disclosure were immaterial to the State's case. It was immaterial whether Mr. Moure was in the master bathroom or master bedroom. In either case, the statements do not place him in the victim's bedroom where the assault occurred.

Rather, Petitioner conceded that he was in the victim's room at the relevant time, and points to no evidence that Mr. Moure was there as well. *See* Doc. 28 at 4. "In these circumstances, it is of no import whether Mr. Moure was in the shower in the master bathroom or in bed in the master bedroom just before J.C.'s disclosure." PFRD, Doc. 29 at 17. The Court cannot conclude that the presentation of these statements made trial so fundamentally unfair as to deny Petitioner due

process. *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990).

Here, Petitioner has not shown that the state habeas court's decision was contrary to, or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Moreover, he has not shown this was an unreasonable determination of the facts in light of the evidence presented in state court proceedings. § 2254(d).

Petitioner objects, asserting that it is not reasonable for a witness to misremember facts. *See* Objections, Doc. 35 at 28. The Court disagrees, and notes that the law cited above allows for reasonable misremembering. Petitioner also for the first time raises bolstering in the objection to the PFRD. Objections, Doc. 35 at 33. Because this claim was not presented previously, it is waived.

Therefore, Court denies Petitioner's prosecutorial misconduct claim based on the alleged presentation of perjured testimony. The Court overrules Petitioner's objection and adopts Judge Khalsa's analysis in full. *See* Doc. 29 at 13-18.

### C.   False and misleading statement in closing argument (Claim 1(c))

Petitioner asserts that the prosecutor violated his constitutional right to a fair trial by arguing in closing that "the only other adult male in the house is her father, and we know where he's at at the time. He's in the bathroom taking a shower with mom." Doc. 1 at 5-10; Doc. 20-1 at 109-10. Petitioner asserts this statement was false and misleading. To show these statements were false and misleading, he points to Mr. Moure's and Ms. Cabral's alleged inconsistent statements to Detectives Medina and Martinez regarding Mr. Moure's location and activities just before J.C. disclosed the charged assault to Ms. Cabral. As explained below, the statement was not improper, and alternatively, it was superfluous to the case.

When "specific guarantees of the Bill of Rights" are not involved, a prosecutor's improper argument warrants habeas relief only when the argument "so infected the trial with unfairness as

to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. Any cautionary steps—such as instructions to the jury—offered by the court to counteract improper remarks may also be considered. Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (internal citations omitted). In determining whether a prosecutor's argument rendered a trial fundamentally unfair, courts view the argument

> in context, considering the strength of the State's case and determining whether the prosecutor's challenged remarks plausibly could have tipped the scales in favor of the prosecution. Ultimately, we consider the probable effect the prosecutor's remarks had on the jury's ability to judge the evidence fairly.

*Neill v. Gibson*, 278 F.3d 1044, 1061 (10th Cir. 2001) (quotation marks and citations omitted). Moreover, although

> a conviction should be overturned if the prosecutor's comments were enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented, … considerable latitude is given the prosecutor in replying to an argument raised by defense counsel's closing statement.

*United States v. Washita Const. Co.*, 789 F.2d 809, 822–23 (10th Cir. 1986) (quotation marks omitted); *see also United States v. Franklin-El*, 555 F.3d 1115, 1126 (10th Cir. 2009) ("Prosecutors have considerable latitude to respond to an argument made by opposing counsel.").

The state habeas court considered and rejected Petitioner's arguments. *See* Doc. 19-1, Exhibit UUU, at 432-33. The state court reasoned that the comment was not of such weight as to require setting aside Petitioner's conviction and was invited by defense counsel who raised the question of identity. Doc. 19-1 at 433. In her PFRD, Judge Khalsa reasoned that the challenged

comment was (1) made in rebuttal; (2) invited by defense counsel; and (3) superfluous to the state's case. Doc. 29 at 19.

Petitioner has not demonstrated that the statement was false and misleading. The prosecutor's statements were a reasonable interpretation of the evidence presented.

Moreover, the challenged distinction – whether Mr. Moure was in the master bedroom or bathroom, was superfluous to the state's case. As Judge Khalsa noted:

> However… fairminded jurists could conclude that the challenged remark, and the testimony to which it alluded, were superfluous to the State's case. Again, J.C. positively and credibly identified Petitioner as the perpetrator of the charged assault; Petitioner concedes that he was in J.C.'s bedroom, the scene of the assault, at the relevant time; and, he points to no evidence that Mr. Moure was there too and so could have committed the assault in his stead. In these circumstances, whether Mr. Moure was in the master bathroom or the master bedroom just before J.C.'s disclosure is irrelevant.

Doc. 29 at 19. Upon reviewing the record *de novo*, the Court agrees. Fairminded jurists could conclude that the remark was superfluous, as it was not relevant to the case whether Mr. Moure was in the master bedroom or master bathroom. There was no evidence presented that Mr. Moure could have committed the assault. Moreover, fairminded jurists could conclude that the weight of the statement did not require setting aside the conviction. Doc. 19-1 at 433.

The state habeas court also concluded that the remarks were made in response to one of defense counsel's closing arguments raising the issue of identity. Doc. 19-1 at 433. "Petitioner's counsel Mr. Coronado tried to cast doubt on J.C.'s testimony that she saw Petitioner in her bedroom shortly after the charged assault, by pointing out that J.C. had not mentioned this during his pretrial interview of her. (Doc. 20-1 at 94-95.) In other words, he tried to cast doubt on J.C.'s testimony identifying Petitioner as the person who assaulted her." PFRD, Doc. 29 at 19-20. For these reasons, fairminded jurists could agree with the state habeas court's refusal to vacate Petitioner's conviction on the basis of the prosecutor's challenged remark.

Judge Khalsa recommended that challenges to other remarks at closing, which were not made in the Petition (Doc. 1), were waived. The Court agrees that to the extent Petitioner challenges other closing remarks outside of his petition, such as in his reply to his petition, those claims have been waived. *Windsor v. Patton*, 623 F. App'x 943, 947 (10th Cir. 2015); *United States v. Carpenter*, 24 F. App'x 899, 905 n.5 (10th Cir. 2001); Rule 2(c)(1), Rules Governing Section 2254 Cases in the United States District Courts. Petitioner objected to the recommendation that he waived any claim as to the prosecutor's statement at closing that "It happened. You know it happened." Because Petitioner did not challenge this comment in his federal petition, any such claim is waived. Alternatively, "inappropriate prosecutorial comments, standing alone," are not sufficient to vacate "a criminal conviction obtained in an otherwise fair proceeding.'" *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "The errant remarks must have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885 (10th Cir. 2019) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether the challenged remarks deprived the petitioner of a fair trial, courts must consider "all the surrounding circumstances, including the strength of the state's case" and any cautionary instructions to the jury. *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006). Here, fair-minded jurists could agree with the state habeas court's rejection of this claim. This statement was grounded in evidence and not "enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented." *Franklin-El*, 555 F.3d at 1125-26; *Washita Const. Co.*, 789 F.2d at 822-23.

For the reasons stated herein and in Judge Khalsa's PFRD (Doc. 29), the Court concludes that Petitioner's prosecutorial misconduct claims are not well taken and are therefore denied. Petitioner's objections to Judge Khalsa's PFRD are overruled, and the PFRD is adopted in full.

**IV.**     <u>**Ineffective Assistance of trial counsel (Claim 2)**</u>.

Petitioner asserts that trial counsel was constitutionally ineffective by: (a) failing to file a motion for his "accusers" to undergo polygraph examinations; (b) failing to appeal the trial court's denial of his speedy trial motion; (c) failing to adequately cross-examine and impeach J.C. and her parents; and, (d) forbidding Petitioner from testifying. Here, Judge Khalsa recommended that each ineffective assistance claim be denied. Petitioner objected. Upon *de novo* review where appropriate, the Court overrules Petitioner's objections and adopts Judge Khalsa's recommendation.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend VI. To establish a deprivation of this right, a petitioner must demonstrate: (1) counsel's performance was deficient and (2) such performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). *"*Under this test, the petitioner must show both that his 'counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 694). *Strickland* applies to appellate counsel. *See United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges appellate counsel failed to raise an issue on appeal, the court "first examine[s] the merits of the omitted issue." *Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999*). "*If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Id.* (quotations omitted). If the issue has merit, the Court must then determine whether counsel's failure to raise it "was deficient and prejudicial" under Strickland*.*    *Id.*

Standing alone, the *Strickland* standard is "highly deferential." *Strickland*, 466 U.S. at 689.

Coupled with § 2254(d)(1), this Court's review of the state court's ruling is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review … applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."). "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [this Court] defer[s] to the state court's determination that counsel's performance was not deficient and, further, … to the attorney's decision in how to best represent a client." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

### A.    Polygraph Examination (Claim 2(a)).

Petitioner asserts his trial counsel was ineffective by failing to file a motion to compel his accusers to take a polygraph examination. Petitioner did not present this polygraph claim to the state habeas court.

Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

As explained above, Petitioner first raised this polygraph claim in his federal petition. Nevertheless, the Court may deny this unexhausted claim on the merits, and respondent expressly waives the exhaustion requirement. § 2254(b)(2), (3).

Here, Petitioner has not cited to any federal law suggesting that trial counsel is ineffective by not moving for the Government's witnesses to take a polygraph examination. Moreover, any such motion would have been futile. New Mexico Rule 11-707 provides that "[n]o witness shall be compelled to take a polygraph examination." N.M. R. Evid. 11-707(F). In his federal Petition Petitioner does not challenge the constitutionality of this rule, and the motion he claims his counsel

should have filed would have sought relief that this rule directly prohibits.

To the extent Petitioner requests disclosure of the results of polygraph examinations already taken, there is nothing in the record to support the assertion that the State's witnesses took polygraph examinations.

In his objection, Petitioner cites to *Scheffer*. As explained above, the Supreme Court's holding in *Scheffer* is not favorable to Petitioner. *See United States v. Scheffer*, 523 U.S. 303, 313, 118 S. Ct. 1261, 1267, 140 L. Ed. 2d 413 (1998). *Scheffer* held that a rule excluding polygraph results offered by a defendant to support his credibility in a military trial did not unconstitutionally abridge a defendant's right to present a defense. *Scheffer* did not hold that a state rule prohibiting witnesses from being compelled to take a polygraph examination was unconstitutional.

In these circumstances, trial counsel's decision not to file the motion clearly falls within "the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689; and, there is no reasonable probability that, but for this failure, the result of the proceeding would have been different. *Lafler*, 566 U.S. at 163.

**B.    Trial Counsel's failure to appeal denial of speedy trial motion (Claim 2(b)).**

Petitioner asserts that his trial counsel was ineffective by failing to appeal the denial of his speedy trial motion. As explained below and in Judge Khalsa's PFRD, this claim is not meritorious. Petitioner's objection is overruled on *de novo* review.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a "speedy and public trial." *United States v. Keith*, 61 F.4th 839, 852 (10th Cir. 2023). The right "attaches when the defendant is arrested or indicted, whichever comes first," and "detaches upon conviction[.]" *United States v. Muhtorov*, 20 F.4th 558, 634 (10th Cir. 2021), *cert. denied,* — U.S. —, 143 S. Ct. 246 (2022). The Supreme Court has identified four factors courts

must balance in determining whether a defendant's constitutional speedy trial right has been violated, *i.e.*, (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant from the delay. *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972); *Keith*, 61 F.4th at 852; *Muhtorov*, 20 F.4th at 634. "No one of the factors is necessary or sufficient to conclude a violation has occurred. Instead, the factors are related and must be considered together along with other relevant circumstances." *Muhtorov*, 20 F.4th at 634. Delays approaching one year or more trigger the four-factor *Barker* analysis. *Id.* at 638.

Here, the state habeas court held that Petitioner failed to show a reasonable probability that, but for his trial counsel's alleged errors, the result of the proceedings against him would have been different, as required by the *Strickland* prejudice prong. Doc. 19-1 at 432-33; *Lafler*, 566 U.S. at 163. It held that Petitioner failed to demonstrate any actual prejudice or harm resulting therefrom because he does not establish any meritorious basis for appeal that should have been raised and that would warrant setting aside his conviction. Doc. 19-1 at 433-34. It also held that he did not show a reasonable probability that he would have prevailed on appeal on any ground. *Id.* Judge Khalsa noted that fair-minded jurists could agree with the state habeas court's conclusion that Petitioner failed to satisfy *Strickland's* prejudice prong.

Judge Khalsa analyzed each of the *Barker* factors and concluded that "fairminded jurists could agree with this determination as it applies to Petitioner's ineffective assistance of counsel claim based on his trial counsel's failure to appeal the denial of his speedy trial motion." Doc. 29 at 25. After conducting a *de novo* review, the Court agrees with Judge Khalsa's analysis and incorporates it herein. *See* Doc. 29 at 24-28. Moreover, Petitioner has not shown that this decision was contrary to, or involved an unreasonable application of, Federal law as determined by the

Supreme Court of the United States. 28 U.S.C. § 2254(d). He has also has not shown this was an unreasonable determination of the facts in light of the evidence presented in state court proceedings. § 2254(d).

Petitioner nominally objected, but did not explain how Judge Khalsa erred in her analysis of the *Barker* factors. *See* Objections, Doc. 35 at 52-58 (addressing failure to appeal denial of speedy trial motion, but not addressing Judge Khalsa's analysis of *Barker* factors). This failure to specifically address the *Barker* analysis in the PFRD, or explain why the analysis is incorrect, constitutes a waiver of his objection. Moreover, to the extent Petitioner attempts to raise prejudice for the first time in his objections, which was not included in his federal Petition, those arguments are waived. *United States v. Garfinkle*, 261 F.3d 1030, 1032 n.5 (10th Cir. 2001), *citing Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."). Even if the Court were to conduct a *de novo* review, the Court adopts Judge Khalsa's recommendation.

### C.      Cross-examination (Claim 2(c)).

In Claim 2(c), Petitioner asserts that his trial counsel provided him with constitutionally ineffective assistance by failing to adequately cross-examine and impeach J.C., Mr. Moure, and Ms. Cabral. Doc. 1 at 20-25. Trial counsel cross-examined these witnesses at trial.

Petitioner asserts that his counsel should have impeached or cross-examined witnesses as follows. *First*, he asserts that J.C. made a prior inconsistent statement to Mr. Coronado, and Ms. Cabral made a prior inconsistent statement to Detective Martinez, regarding J.C.'s location when J.C. first disclosed the assault to Ms. Cabral. *Second*, he states counsel should have cross-examined and impeached Mr. Moure and Ms. Cabal regarding Mr. Moure's location just before J.C.'s disclosure by using prior inconsistent statements.

*First,* as explained by Judge Khalsa, the first comment was not inconsistent. At trial, both J.C. and Ms. Cabral testified that J.C. first disclosed the assault to Ms. Cabral after Ms. Cabral opened the master bathroom door in response to J.C.'s knock, shortly after the assault occurred. Doc. 20-1 at 34-35, Doc. 20-2 at 151-54.   In an April 2015 interview with Petitioner's trial counsel Mr. Coronado, Petitioner asserts that J.C. disclosed the charged assault to her mother in the living room. Reading the interview transcript, it is clear that J.C. was referring to the *last* time she had discussed the assault with her mother prior to the April 2015 interview, not the first time she disclosed the assault. *see* Doc. 1 at 43; Doc. 29 at 29-30. "The exchange neither expressly nor impliedly addresses the *first* time J.C. told her mother what happened, and so fails to contradict her or Ms. Cabral's trial testimony on that point." Doc. 29 at 30.

As for Ms. Cabral's statement, Judge Khalsa explained that "Petitioner argues that Ms. Cabral told Detective Martinez that J.C. first disclosed the charged assault to her in the laundry room. (Doc. 1. at 21.) However, read in context, it is plain that Ms. Cabral mentioned the laundry room simply to explain where the shower was in relation to it. (*Id.*) She then went on to say, consistent with her trial testimony, that J.C. first disclosed the abuse to her after she got out of the shower and answered J.C.'s knock. (*Id.*)"   Doc. 29 at 31.

*Second*, Petitioner asserts that trial counsel failed to cross-examine or impeach the witnesses regarding where in the master suite Mr. Moure was before J.C.'s disclosure. But it was immaterial where in the master suite Mr. Moure was when J.C. first disclosed the assault.

Here, trial counsel appropriately declined to cross-examine on these points, as either there (1) were no prior inconsistent statements, or (2) the inconsistencies were immaterial. An attorney's representation is not deficient when the attorney refrains from cross-examining or impeaching a witness using a prior statement that fails to contradict the witness's testimony. *See also Kessler v.*

23

*Cline*, 335 F. App'x 768, 770 (10th Cir. 2009) ("The manner in which counsel cross-examines a particular witness is a strategic choice and therefore virtually unchallengeable.") (quotation marks omitted). Nor is there any reasonable probability that the result of the criminal proceeding would have been different but for an attorney's decision to refrain from cross-examining or trying to impeach a witness in this way. Thus, fairminded jurists could readily agree with the state habeas court's rejection of Petitioner's ineffective assistance of counsel claim based on his trial counsel's decision not to cross-examine or try to impeach J.C. and Ms. Cabral regarding where J.C. first disclosed the charged assault to her mother. Moreover, as explained above, precisely where in the master suite Mr. Moure was at the time of J.C.'s disclosure appears to be irrelevant. These alleged prior consistent statements do not go to the issue of whether Petitioner committed the charged assault. There is no evidence in the record Mr. Moure was in J.C.'s room, where the assault occurred. Counsel's decision not to cross-examine on these issues was well within the range of reasonableness.

Even assuming cross-examination had been deficient, Petitioner has not shown that it was prejudicial in light of the strong evidence against him.

Thus, fairminded jurists could agree with the state habeas court's conclusions.   Petitioner has not shown that the state habeas court's decision was contrary to, or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Moreover, he has not shown this was an unreasonable determination of the facts in light of the evidence presented in state court proceedings. § 2254(d).

The Court overrules Petitioner's objection, and adopts Judge Khalsa's analysis in full. For the reasons stated herein and by Judge Khalsa, Doc. 29 at 28-33, Petitioner's claim regarding ineffective assistance on cross-examination is denied.

**D.    Advice not to testify (Claim 2(d)).**

Petitioner asserts that his trial counsel forbid him from testifying. "[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 4 (1987). Counsel should advise a defendant about testifying and should make a recommendation regarding testifying, but the decision to testify rests with a defendant. *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004). The state habeas court, upon conducting an evidentiary hearing and reviewing the evidence, found that trial counsel did not "forbid" Petitioner to testify, but merely advised him not to testify. *See* Order, Doc. 19-1, Ex. UUU at 432-33. The state habeas court found that Petitioner did not in any manner indicate to the trial court his desire to testify. These factual determinations are presumed to be correct, and Petitioner has not presented clear and convincing evidence rebutting the presumption. § 2254(e)(1). *See* PFRD, Doc. 29 at 35-36 (reciting evidence presented to state habeas court).

To the extent Petitioner contends his trial counsel gave faulty advice not to testify, relief is unavailable. The Tenth Circuit has rejected such arguments where: (1) the advice likely prevented damaging cross-examination; and (2) the defendant's testimony would not have overcome the strong evidence of guilt. See *Cummings v. Sirmons*, 506 F.3d 1211, 1230 (10th Cir. 2007). Both elements are met. It was reasonable to believe that he would be subject to damaging cross-examination, in light of the evidence presented. Moreover, any testimony would not have overcome the strong evidence of guilt.

At the evidentiary habeas hearing, Petitioner stated what he would have testified as follows. As summarized by Judge Khalsa:

> (1) he had been drinking at Hooter's and at Mr. Moure's and Ms. Cabral's home; (2) Ms. Cabral gave him a "mixed drink" instead of "[his] drink," which was "a liquor bottle"; (3) about three-quarters of the way through the mixed drink, he felt "wrong," changed clothes, lay down, and could not get back up; (4) he recalled Ms.

Cabral helping him to J.C.'s bedroom; (5) the next thing he recalled was Mr. Moure telling him to leave the home; (6) he believed "they" might have put something in his mixed drink; and, (7) he subsequently took a toxicology test but never got the results.

PFRD, Doc. 29 at 36, *citing* Doc. 21, Evid. Hrg. Rec. at 7:20 to 8:50, 10:40 to 13:10.

The state habeas court found that "the Defendant not to show that counsel was ineffective for failing to call him to the stand to testify at trial, in light of the evidence presented against him by the State, nor does he show a reasonable probability that the outcome of trial would have been different had counsel called him to the stand at trial, in light of the evidence presented against him by the State." Doc. 19-1 at 433. Here, Petitioner has not shown that this decision was contrary to, or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Moreover, he has not shown this was an unreasonable determination of the facts in light of the evidence presented in state court proceedings. § 2254(d). Petitioner has not shown that his trial counsel's advice was deficient, or prejudiced his case.

### E.     Calling witnesses

The Court notes that Petitioner does not appear to have challenged in his federal petition the decision not to call witnesses. Although he appears to have challenged the decision not to call witnesses in his state habeas proceeding, he did not challenge that decision in his federal petition. *See* Petition, Doc. 1. Therefore, any such claim is waived and the Court need not address it.

Alternatively, only to the extent such claim is not waived, the Court notes that the state habeas court considered and rejected any such argument. "[S]peculative assertions" regarding the failure to call or question witnesses are "insufficient to carry [the] burden of proving prejudice" under *Strickland. Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008). To obtain relief, the petitioner must "show how the [omitted] testimony—even if favorable to him—would have

changed the outcome of his case." *Id.*

The state habeas court found that Petitioner had not indicated a disagreement at trial with his trial counsel's decision not to call witnesses. Doc. 19-1 at 433-34. Here, Petitioner has not argued or shown that this decision was contrary to, or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Moreover, he has not shown this was an unreasonable determination of the facts in light of the evidence presented in state court proceedings. § 2254(d).

Petitioner's objection (Doc. 35 at 65-66) is therefore overruled.

## IV.   Ineffective assistance of sentencing and appellate counsel (Claim 3).

Petitioner asserts that his sentencing and appellate counsel provided him with constitutionally ineffective assistance, and Petitioner was deprived of his right to a meaningful appeal, because sentencing and appellate counsel failed to take adequate steps to familiarize themselves with the trial. Judge Khalsa recommended denying this claim. Petitioner objected. For the reasons stated below, the Court will overrule Petitioner's objection and adopt Judge Khalsa's recommendation.

The state habeas court concluded that Petitioner "fail[ed] to demonstrate any actual prejudice or harm" arising out of sentencing and appellate counsel's performance, because he failed to show "any meritorious basis for appeal that should have been raised …. He does not show a reasonable probability that he would have prevailed on appeal on any grounds." Doc. 19-1, Ex. UUU at 433-34. The state habeas court also said there was "also no basis to presume prejudice" under the circumstances. *Id.* at 434. Petitioner has not shown that this decision was contrary to, or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Moreover, he has not shown this was an unreasonable

determination of the facts in light of the evidence presented in state court proceedings. § 2254(d).

Petitioner asserts that his appellate counsel was not familiar with his criminal trial. The Supreme Court has "identified three extreme situations so likely to prejudice the accused that the cost of litigating their effect in a particular case under *Strickland* is unjustified." *Williams v. Trammell*, 782 F.3d 1184, 1200 (10th Cir. 2015) (quotation marks and brackets omitted). These are: (1) "complete denial of counsel" at "a critical stage"; (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and, (3) "counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell*, 535 U.S. at 695–96. The state habeas court concluded that Petitioner was not entitled to a presumption of prejudice. Doc. 19-1 at 434.  Petitioner does not specifically argue that one of these situations applies here. There is no dispute that Petitioner was represented by counsel on direct appeal. Moreover, counsel subjected the prosecution's case to meaningful adversarial testing. Finally, Petitioner does not argue that competent counsel could not effectively assist him.

"When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, [the court] first examine[s] the merits of the omitted issue. If the omitted issue is meritless, then counsels' failure to raise it does not amount to constitutionally ineffective assistance."   *Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999).

Here, in his federal petition Petitioner does not set forth any issue he claims should have been raised on appeal, or show that any such issue would have succeeded on appeal. *See* Petition, Doc. 1 at 29-30. Petitioner therefore failed to carry his burden, or alternatively this failure constitutes a waiver of his claim. Alternatively, to the extent the Court is required to *sua sponte* argue for him, the court notes that at the evidentiary hearing, state habeas counsel stated that issues

on appeal could have included the exclusion of witnesses, the denial of the speedy trial motion,

and prosecutorial misconduct. *See* Doc. 19 at 38. The state habeas court rejected these arguments

as Petitioner failed to show any of them were meritorious. Petitioner has failed to show the state

habeas court's ruling was an unreasonable application of federal law under § 2254(d), or violated

the *Strickland* test. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential

judicial review … applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard.").

Therefore, Petitioner's claim for ineffective assistance of counsel on appeal is denied.

## V.      **Motion for a new trial (Claim 4).**

Petitioner asserts that the trial court erred in denying Petitioner's *pro se* motion for a new

trial. Doc. 1 at 10-15. Judge Khalsa recommended denying this claim. The Court adopts Judge

Khalsa's recommendation and denies this claim.

Petitioner filed his *pro se* motion for a new trial on November 19, 2015, several months

after the jury's verdict on July 29, 2015. Doc. 1 at 11; Doc. 19-1 at 118-68. On February 2, 2016,

the state trial court denied the motion, explaining that

> [p]er Rule 5-614(C) NMRA, a motion for new trial must be made within ten (10)
> days after verdict or finding of guilty, unless such motion is based upon newly
> discovered evidence. Defendant does not cite newly discovered evidence as
> grounds for his request. The ten (10) day deadline for filing the instant motion
> passed on or about August 13, 2015, and thus Defendant's November 19, 2015,
> filing is untimely. The untimely request deprives the [c]ourt of jurisdiction to
> entertain Defendant's motion.

(Doc. 19-1 at 199.). In other words, the trial court denied the motion for new trial on state law

grounds pursuant to New Mexico Rule 5-614(C). As Judge Khalsa reasoned, "[i]n his Petition,

Petitioner fails to argue or show that the state trial court's denial of his *pro se* motion for new trial

violated any of his federally-protected rights. (*See* Doc. 1 at 10-15.) Rather, he merely challenges

this state-court determination on state-law grounds, *i.e.*, on the state trial court's purported

erroneous application of Rule 5-614. (*Id.*) Thus, Petitioner is not entitled to federal habeas relief for the claimed error. *Estelle*, 502 U.S. at 67-68." PFRD, Doc. 29 at 43.

Petitioner's claim challenging the denial of the motion for new trial on state law grounds is therefore not cognizable in a federal habeas proceeding. *Farrar. v. Raemisch,* 924 F.3d 1126, 1132-34 (10th Cir. 2019). "When a federal court, on habeas review, examines state criminal convictions, the federal court does not sit as a 'super-appellate' court." *Davis v. Roberts*, 579 F. App'x 662, 665 (10th Cir. 2014). As such,

> federal habeas corpus relief does not lie for errors of state law.… [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (quotation marks and citations omitted).

Alternatively, as Judge Khalsa explained, the statements Petitioner identifies as new evidence in his Petition are not new evidence. Therefore, Petitioner's asserted new evidence does not meet "the requirement that the evidence [was] discovered *after trial*." *New Mexico v. Volpato*, 1985-NMSC-017, ¶¶ 7, 13, 102 N.M. 383, 384-85, 696 P.2d 471, 472-73 (emphasis added). Petitioner identifies seven statements. *See* Doc. 1 at 10-15. All statements were made well before or at trial. Petitioner does not assert or prove that the statements were not disclosed until after trial. *See* Doc. 1 at 10-15.

Alternatively, the state trial court concluded that there was no harm in the denial of the new motion, as there were no meritorious grounds to justify a new trial. *See* Doc. 19-1 at 434. Petitioner has not shown that this decision was contrary to, or involved an unreasonable application of, Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Moreover, he has not shown this was an unreasonable determination of the facts in light of the

evidence presented in state court proceedings. § 2254(d).

In his reply to his federal Petition, Petitioner asserted that the denial of his motion for a new trial violated his federal rights because the prosecution did not timely respond to the motion. Doc. 28 at 26. Petitioner waived this claim by failing to raise it in his Petition. *Windsor*, 623 F. App'x at 947; *Carpenter*, 24 F. App'x at 905 n.5. Alternatively, this argument does not show how a federal right was violated.

## VI.      Petitioner's Motion to Dismiss.

Petitioner filed a motion seeking to "dismiss" various filings by the Respondent, and Judge Khalsa's PFRD. *See* Motion to Dismiss Action, Doc. 43. Although labeled a "motion to dismiss", Petitioner appears to request the Court strike respondents' filings. The Court sees no basis to strike these filings. Respondent has complied with all applicable deadlines, and has not violated any court order. Petitioner's motion to dismiss is therefore denied.

## VII.      Order Denying Certificate of Appealability.

In a habeas corpus proceeding, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2254 Cases in the United States District Courts, Rule 11(a). To be entitled to a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, the Court's conclusions are not reasonably debatable. The Court therefore will deny a certificate of appealability.

**CONCLUSION**

After conducting a *de novo* review of the record and having carefully considered the PFRD and the objections, the Court finds no reason either in law or fact to depart from Judge Khalsa's recommended disposition. The Court incorporates Judge Khalsa's PFRD (Doc. 29) herein. The Court therefore adopts the PFRD, overrules Petitioner's objections, denies the remaining claims in the habeas petition, and denies a certificate of appealability.

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. Petitioner's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 35) are OVERRULED;

2. The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 29) is ADOPTED;

3. The Court DENIES Petitioner's Petition Under 28 U.S.C. § 2254 for Writ [of] Habeas Corpus by a Person in State Custody (Doc. 1); and,

4. The Court DENIES a certificate of appealability.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Dismiss Action (Doc. 43) is DENIED.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE